IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT A. JAMES, by his next friend and attorney in fact, JOSEPHINE A. JAMES, | : : : : |
| Plaintiff | : |
| v. | : : |
| ESTELLE B. RICHMAN, in her official capacity as Secretary of the Commonwealth of Pennsylvania Department of Public Welfare, | : : : : : |
| Defendants | : |

CIVIL ACTION NO. 3:05-2647

(JUDGE CAPUTO)

## MEMORANDUM

Before me is the Plaintiff's Request for Temporary Restraining Order and Motion for Preliminary Injunction. (Doc. 10). The request and motion seek to enjoin Estelle B. Richman, the Secretary of the Commonwealth of Pennsylvania Department of Public Welfare to cease denying Medicaid coverage to the plaintiff and to order the defendant, Ms. Richman, to issue Medicaid from the date of requested eligibility throughout the pendency of this case.

Because the plaintiff is likely to succeed on the merits and will suffer irreparable harm if the injunction is not granted, I will enter a restraining order.

## DISCUSSION

The facts are not in dispute.  By way of background, Pennsylvania participates in the Federal Medicaid Program established by Title XIX of the Social Security Act, also known as the Medicaid Act, 42 U.S.C. §1396 *et seq.*  Under the Act, the states are granted federal funding to establish plans to dispense assistance to qualified needy individuals.  The federal

1

funding is conditioned on the state's adoption of a plan which complies with specific federal requirements. The Department of Public Welfare ("Department") is the Pennsylvania regulatory body charged with administering this program throughout the Commonwealth of Pennsylvania.

The Medicare Catastrophic Coverage Act of 1988 ("MCCA"), 42 U.S.C. § 1396r-5, amended the Medicaid Act to provide for spousal impoverishment provisions which "permit a spouse living at home (called the `community spouse') to reserve certain income and assets to meet the minimum monthly maintenance needs he or she will have when the other spouse (the `institutionalized spouse') is institutionalized, usually in a nursing home, and becomes eligible for Medicaid." *Wisconsin Department Health and Family Services v. Blumer*, 534 U.S. 473, 478 (2002). The court also found that Congress sought to bar financially secure couples from Medicare assistance. *Id.* at 480.

The MCCA provides that "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r-5(b)(1). "The community spouse's income is thus preserved for that spouse and does not effect the determination whether the institutionalized spouse qualifies for Medicaid." *Blumer*, 534 U.S. at 480-81.

MCCA shelters a standard amount of assets called "Community Spouse Resource Allowance" or "CSRA." *Id.* at 477. To determine the CSRA, the total of all the couples' resources whether owned jointly or severally, is calculated as of the time one spouse is institutionalized; half of that total is then allocated to each spouse. 42 U.S.C. § 1396r-5(c)(1)(A). That amount is the CSRA and is subject to a ceiling. 42 U.S.C. § 1396r-5(c)(2)(B), (f)(2)(A), (g). In determining eligibility, the CSRA is not considered available to the institutionalized spouse, but all resources above the CSRA must be spent for that spouse in order for that spouse to be eligible. *Blumer*, 534 U.S. at 482-83.

As a part of this regimen, an institutionalized spouse otherwise eligible for Medical Assistance, may be denied Medicaid eligibility in the event that that person or his or her spouse has transferred a non-exempt asset for less than fair market value during a period, generally thirty-six (36) months, before applying for medical assistance. 42 U.S.C. § 1396p (c)(1)(A) and (c)(1)(B)(I). If there is such an asset transferred during this "look back" period, then the applicant is subject to a penalty, a period of ineligibility for assistance for nursing home care.

In this case, the plaintiff, Robert A. James, entered a nursing facility in Wilkes-Barre, Pennsylvania on August 10, 2005, at which time he was seventy-seven (77) years old. On September 20, 2005, plaintiff filed a Resource Assessment with the Department of Public Welfare, setting forth that plaintiff had available resources on the date of his admission to the nursing facility totaling $381,443.00. After allowing the CSRA, and the institutionalized spouse allowance, there was $278,343.00 in available resources. In order to reduce their assets to the required level of spousal impoverishment, the plaintiff's wife, Josephine, purchased a single premium immediate irrevocable annuity from General Electric Insurance Company for $250,000.00. The annuity was payable to plaintiff's wife in monthly amounts of $2,937.71 from October 1, 2005 to September 1, 2013, an eight (8) year period. The terms of the annuity provides "This contract may not be surrendered, transferred, collaterally assigned, or returned for a return of the premium paid. This contract is irrevocable and has no cash surrender value. An Owner may not amend this contract, or change any designation under this contract." Plaintiff's spouse also purchased an automobile for $28,550.00. At this point, all of plaintiff's available resources beyond the permitted allowances had been spent or converted to the annuity.

Subsequent to the application for Medicaid coverage seeking eligibility for September

15, 2005, the Department issued a notice to the plaintiff advising that the plaintiff was ineligible for nursing home payments because excess resources existed due to the availability of the $250,000.00 annuity.  At the time of the annuity purchase, the plaintiff's spouse was seventy-eight (78) years of age and her life expectancy was 10.24 years.  Affidavit of Josephine A. James, Doc. 15.  The parties agree that the annuity is actuarially sound.

The reasons for the rejection for assistance is that the Defendant contends that the annuity has a value of $185,000.00 and therefore represents proceeds that are beyond the CSRA, and are therefore available for payment for nursing care.  As a result, the Department is denying coverage.  Defendants offer the Affidavit of Michael Goodman, the CEO of J.G. Wentworth, a finance company specializing in the purchase of annuities, as evidence of the value of the annuity. (*See* Def. Ex. A to Def. Brief in Opposition to Plaintiff's Request for Temporary Restraining Order and Motion for Preliminary Injunction, Doc. 17).

I. **Jurisdiction**

The complaint sets forth the claim that the Commonwealth has enacted legislation that is not consistent with Federal law and one or more parts of that law has been relied upon for the denial of Medicaid benefits to plaintiff.  While the Medicaid Act does not guarantee rights to individuals, it compels states to draft a plan that is in conformity with Federal law.  *See Sabree v. Richardson*, 367 F.3d 180, 182 (3d Cir. 2004).  When a state drafts a plan that is not in conformity with the law, and the plan leads to the denial of Medicaid benefits, an adversely affected applicant has grounds to raise a Federal question.  This is the contention in this case and I therefore find that there is Federal question jurisdiction.  28 U.S.C. § 1331.

II. **Factors for Interim Relief**

The factors in assessing whether or not to grant interim relief in the form of a temporary restraining order or preliminary injunction are well established.  They are (1) whether the plaintiff has a reasonable probability of success on the merits; (2) whether the plaintiff will be irreparably harmed if relief is denied; (3) whether a grant of relief will result in greater harm to the defendant; and, (4) whether the grant of relief would be in the public interest. *See A.C.L.U. v. Reno*, 217 F.3d 162, 172 (3d Cir. 2000).  Moreover, the burden is on the plaintiff to establish all elements are required for preliminary injunctive relief.  *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000).[1]

### III.    **Likelihood of Success on the Merits**

Federal law provides that an applicant can transfer assets to his or her spouse so long as they are for the spouse's benefit.   42 U.S.C.  § 1396p(c)(2)(B)(I); Transmittal 64, § 3257.B.6 and  § 3258.11.   42 U.S.C.  § 1396p(d)(2)(a)(ii) provides, in pertinent part, "an individual shall be considered to have established a trust if the assets of the individual were used to form all or part of the corpus of the trust and if the individual or the individual's spouse established the trust."   42 U.S.C.  § 1396p(3)(B)(I) provides in the case of an irrevocable trust, if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made, shall be considered resources available to the individual.  And as to what a trust is, is set forth in 42 U.S.C.  § 1396p(d)(6).  "A trust includes an annuity only to the extent and in such manner as the secretary specifies." Transmittal 64 to the State Medicaid Manual contains provisions

---

1. Upon notice and opportunity to be heard, a motion for temporary restraining order is treated as one for a preliminary injunction. See Moore's Federal Practice, § 65.31 (3d Ed. 2000).  *See Earley v. Smoot,* 846 F.Supp. 451, 452. (D. Md. 1994).

5

dealing with the question of when an annuity may be considered an irrevocable trust and shall not be a transfer of assets.  See Transmittal 64, § 3258.9B.  It describes how annuities are treated under the trust provision. It provides, in pertinent part:

> "**Annuities, although usually purchased in order to provide a source of income for retirement, are occasionally used to shelter assets so that individuals purchasing them can become eligible for Medicaid.  In order to avoid penalizing annuities validly purchased as part of a retirement plan but to capture those annuities which abusively shelter assets, a determination must be made with regard to the ultimate purpose of the annuity (i.e., whether the purchase of the annuity constitutes a transfer of assets for less than fair market value).  If the expected return on the annuity is commensurate with a reasonable estimate of life expectancy of the beneficiary, the annuity can be deemed actuarially sound.**" *Id*.

It has been held that available assets may become unavailable assets and not countable in determining Medicare eligibility for the institutionalized spouse by purchasing an irrevocable actuarially sound commercial annuity for the sole benefit of the community spouse. *Mertz v. Houstoun*, 155 F. Supp. 415, 426-27 (E.D. Pa. 2001).

In July of 2005, the Commonwealth passed legislation (Act 42) which addressed immediate irrevocable annuities.  62 P.S. § 441.6 added restrictions on annuities not found in the federal law which included the following:

> "**(b) Any provisions in an annuity owned by an applicant or spouse of an applicant that has the effect of limiting the right of such owner to sell, transfer or assign the right to receive payments thereunder, or restricts the right to change the designated beneficiary thereunder, is void.**"
>
> "**(c)  In determining eligibility for Medical Assistance, there shall be a rebuttable presumption that any annuity or contract to receive money is marketable without undue hardship.**"
>
> "**(d) An annuity will not be considered an available resource if the annuity names the Department as the residual beneficiary of any funds remaining due under the annuity at the time of death of the annuitant, not to exceed the amount of Medical Assistance expended on the individual during his or her lifetime.**"

Obviously, these provisions attempt to circumscribe the use of annuities for the purpose of sheltering what the Commonwealth considers otherwise available resources. Transmittal 64, § 3258.11B indicates that there can be no penalty on an annuity that is irrevocable and actuarially sound and is for the sole benefit of the community spouse. These terms and conditions are met by the annuity that currently is in place for the benefit of the plaintiff's spouse.  It appears that this device is not consistent with the intent of the MCCA, since it allows assets which would otherwise be available resources to be sheltered so that they cannot be used for the payment of Medical Assistance.  Here, there is little difference between the transfer of $250,000.00 in lump sum to the plaintiff's spouse which would constitute eligible resources and the purchase with $250,000.00 of an annuity which provides income for a period of time.  Nevertheless, the federal law is clear on the subject, and any change in the federal law is a matter for Congress. The annuity such as the one present here is permitted and there can be no penalty.  There is a penalty here, and it is the Declaration of Ineligibility for Medical assistance or Medicaid benefits.  Since the provisions of 62 P.S. § 441.6 noted above impose the penalty of non-eligibility they are arguably in conflict with Transmittal 64, § 3258.9B to such an extent that it is likely the plaintiffs will succeed on their claim that they are in conflict.

Therefore, it is likely that the plaintiff will succeed on the merits of his claim.

IV.     **Irreparable Harm**

The plaintiff has shown that he will suffer irreparable harm if the case proceeds to resolutions on the merits without the grant of temporary or preliminary injunctive relief.  The plaintiff makes a case for the potential for expulsion from the nursing home prior to the resolution of this litigation in the event that no payments are made.  Moreover, the plaintiff cannot be compensated by monetary relief.  The Eleventh Amendment precludes an award

of retroactive payments by a federal court. *See Edelman v.Jordan,* 415 U.S. 651 at 678. In this case, the damages will mount up at the rate of $5,000.00 per month if this relief is not granted. It is a debt for which there is no remedy and therefore constitutes irreparable harm.

V.   **Harm to the Defendant and Public Interest**

The grant of the injunction will not inflict more harm on the Defendant than the failure to grant it would on the Plaintiff.

Also, I find it is in the public interest to grant the relief requested.

## CONCLUSION

I find that there is a likelihood that Plaintiffs will succeed on the merits and will suffer irreparable harm if this relief is not granted. In addition, I find that the Defendant will suffer less harm if the injunction is granted than the Plaintiff will if it is not granted. Moreover, I find that the grant is in the public interest.   An appropriate order follows.


Date: March 20, 2006                            /s/ A. Richard Caputo
                                                A. Richard Caputo
                                                United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT A. JAMES, by his next friend and attorney in fact, JOSEPHINE A. JAMES, | : <br> : <br> : CIVIL ACTION NO. 3:05-2647 <br> : |
| Plaintiff | : (JUDGE CAPUTO) |
| v. | : |
| ESTELLE B. RICHMAN, in her official capacity as Secretary of the Commonwealth of Pennsylvania Department of Public Welfare, | : <br> : <br> : <br> : |
| Defendants | : |

## **ORDER**

AND NOW this 20th day of March, 2006, it is hereby ordered that the Plaintiff's request for temporary restraining order and motion for preliminary injunction is hereby granted. Defendant is hereby enjoined from denying Plaintiff Medicaid until a final decision on the merits of the above-captioned matter. Further, Defendant is ordered to pay Medicaid benefits to plaintiff effective December 1, 2005 and continuing until such time as a decision is rendered on the merits on this case.

This order shall become effective upon the plaintiff posting cash or a bond in the amount of $1,000.00 backed by a surety (or other security) acceptable to the court.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge