## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT A. JAMES by his next friend and
attorney in fact, JOSEPHINE A. JAMES,

    Plaintiff,

       v.

ESTELLE B. RICHMAN, in her official
capacity as Secretary of the
Commonwealth of Pennsylvania,
Department of Public Welfare,

    Defendant.

CIVIL ACTION NO. 3:05-CV-2647

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court are cross motions for summary judgment filed by

Plaintiff Robert A. James and Defendant Estelle B. Richman, Secretary of the

Commonwealth of Pennsylvania, Department of Public Welfare.  (Docs. 30 and 32.)  For

the reasons stated below, Plaintiff's motion for summary judgment, as to his request for a

permanent injunction, will be granted.  Plaintiff's request for a declaratory judgment will

be denied.  Defendant's motion for summary judgment will be denied.  The Court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### STATUTORY BACKGROUND

Pennsylvania participates in the Federal Medicaid Program established by Title

XIX of the Social Security Act, also known as the Medicaid Act, 42 U.S.C. § 1396 *et seq*.

Under the Act, the states are granted federal funding to establish plans to dispense

assistance to qualified needy individuals.  The federal funding is conditioned upon the

state's adoption of a plan which complies with the requirements imposed by the Act and

by the Secretary of the United States Department of Health and Human Services, who administers the Medicaid program through the Health Care Financing Administration ("HCFA").  The Department of Public Welfare is the regulatory body charged with administering Medicaid assistance throughout the Commonwealth of Pennsylvania. *See* 62 PA. STAT. ANN. § 403.  The Medicare Catastrophic Coverage Act of 1988 ("MCCA"), 42 U.S.C. § 1396r-5, amended the Medicaid Act, adding spousal impoverishment provisions which "permit a spouse living at home (called the 'community spouse') to reserve certain income and assets to meet the minimum monthly maintenance needs he or she will have when the other spouse (the 'institutionalized spouse') is institutionalized, usually in a nursing home, and becomes eligible for Medicaid." *Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 478 (2002).  In adopting the MCCA, Congress sought to protect community spouses from becoming impoverished, yet, at the same time, preclude financially secure couples from receiving Medicaid assistance. *Id.* at 480.

The MCCA provides that "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r-5(b)(1).  "The community spouse's income is thus preserved for that spouse and does not affect the determination whether the institutionalized spouse qualifies for Medicaid." *Blumer*, 534 U.S. at 480-81.

The MCCA, however, treats assets differently.  The MCCA shelters a standard amount of assets called the "community spouse resource allowance" or "CSRA." *Id.* at 477.  To determine the CSRA, the total of all the couple's resources, whether owned jointly or severally, is calculated as of the time one spouse is institutionalized; half of that total is then allocated to each spouse. 42 U.S.C. § 1396r-5(c)(1)(A).  That amount is the

CSRA and is subject to a ceiling. 42 U.S.C. § 1396r-5(c)(2)(B), (f)(2)(A), (g).  In

determining eligibility, the CSRA is not considered available to the institutionalized

spouse, but all resources above the CSRA must be spent in order for the institutionalized

spouse to be eligible for Medicaid. *Blumer*, 534 U.S. at 482-83.

### FACTUAL BACKGROUND

The undisputed material facts, as stipulated to by the parties, are as follows.

Plaintiff Robert A. James is a seventy-eight (78) year old resident of Summit Health Care

nursing facility in Wilkes-Barre, Pennsylvania. (Doc. 28 ¶ 1.)  Plaintiff has at all relevant

times been married to Josephine A. James, who is seventy-six (76) years of age. (Doc.

28 ¶ 5.)

On August 10, 2005, Plaintiff, then seventy-seven (77) years of age, was admitted

into Summit Health Care nursing facility, where he has since resided. (Doc. 28 ¶¶ 3-4.)

On September 20, 2005, Plaintiff filed a Resource Assessment with the Department of

Public Welfare at the Luzerne County Assistance Office. (Doc. 28 ¶ 6.)  Therein, Plaintiff

stated that he and his wife's available resources, as of the date of Plaintiff's admission to

Summit Health Care nursing facility, totaled $381,443.00. *Id.*  After allowing for the

CSRA, and the institutionalized spouse's allowance, Plaintiff and his wife had available

resources totaling $278,343.00. (Doc. 28 ¶ 7.)

In order to reduce their assets to the required level of spousal impoverishment,

on September 12, 2005, Mrs. James purchased a single premium immediate irrevocable

annuity from General Electric Assurance Company, a commercial insurance company

licensed to sell in the Commonwealth of Pennsylvania, for $250,000.00. (Doc. 28 ¶ 8.)

This annuity was payable to Mrs. James in monthly amounts of $2,937.71, beginning

3

October 1, 2005 and ending on September 1, 2013, an eight (8) year period. *Id.*  The

terms of the endorsement to the annuity provide "[t]his Contract may not be surrendered,

transferred, collaterally assigned, or returned for a return of the premium paid.  This

Contract is irrevocable and has no cash surrender value.  An Owner may not amend this

Contract or change any designation under this Contract." (Doc. 28 ¶ 9.)  The parties

agree that this annuity is actuarially sound.

On September 15, 2005, Plaintiff purchased a new vehicle for $28,550.00. (Doc.

28 ¶ 10.)  At this point, all resources beyond those permitted by the CSRA and the

institutionalized spouse's allowance had been spent or converted to the annuity. *Id.*

Thereafter, on September 20, 2005, Plaintiff filed an application for Medicaid

coverage to assist with the payment of Plaintiff's nursing facility bill, seeking eligibility for

September 15, 2005. (Doc. 28 ¶ 11.)

On November 22, 2005, the Luzerne County Assistance Office determined that

Plaintiff was not eligible for Medicaid assistance because he did not receive fair

consideration for resources used to purchase the annuity. (Ex. D.)

On December 12, 2005, the Department of Public Welfare issued a new PA 162

Notice to Plaintiff, advising him that the notice he had previously received, on November

22, 2005, was rescinded, and that he was "ineligible for nursing home payment at this

time.  Excess resources exist due to the availability of the $250,000 annuity.  You may

reapply when resources are within eligibility limits." (Doc. 28 ¶ 12.)  The reason for the

rejection for Medicaid assistance is that, in the view of Defendant, the annuity has a value

of $185,000.00 and therefore represents assets that are beyond the CSRA, and are

therefore available for payment for nursing care.  Defendant offers the declaration of

Michael Goodman, Chief Executive Officer of J.G. Wentworth, a finance company specializing in the purchase of annuities, as evidence of the value and marketability of the annuity, despite the non-assignment language placed in the endorsement. (Doc. 17-2.)

Plaintiff timely appealed the Department's decision to the Office of Hearings and Appeals. (Doc. 28 ¶ 14.)  Plaintiff's appeal is still pending. *Id.*  If denied Medicaid benefits, Plaintiff will have to privately pay for his nursing facility care at a private rate of over $5,000 per month. (Doc. 28 ¶ 13.)

On December 21, 2005, Plaintiff filed a Complaint in this Court. (Doc. 1-1.) Plaintiff alleged that Defendant's decision to deny him Medicaid benefits, on the ground that the annuity purchased by Plaintiff's spouse is an available resource to be counted in determining Medicaid eligibility, violates the Medicaid Act, 42 U.S.C. § 1396 *et seq*., the federal regulations governing annuities established by the United States Department of Health and Human Services under 42 U.S.C. § 1396p(d)(6), as well as the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, cl. 2. (Doc. 1-1 ¶ 1.) Plaintiff sought to enjoin Defendant from denying him Medicaid benefits and to have the recently enacted Commonwealth of Pennsylvania statute, known as Act 42, 62 PA. STAT. ANN. § 441.6,[1] which governs Medicaid eligibility and annuities, declared preempted

---

[1]In July of 2005, the Commonwealth passed Act 42, 62 PA. STAT. ANN. § 441.6, which added restrictions on annuities not contained in the federal Medicaid Act, including:

> (b) Any provisions in an annuity owned by an applicant or spouse of an applicant that has the effect of limiting the right of such owner to sell, transfer or assign the right to receive payments thereunder, or restricts the right to change the designated beneficiary thereunder, is void.
> (c) In determining eligibility for Medical Assistance, there shall be a rebuttable presumption that any annuity or contract to receive money is marketable without undue hardship.
> (d) An annuity will not be considered an available resource if the annuity

under the Supremacy Clause. (Doc. 1-1 ¶ 1.)

On March 6, 2006, Plaintiff filed a Request for Temporary Restraining Order and Motion for Preliminary Injunction. (Doc. 10-1.)  On March 20, 2006, this Court granted Plaintiff's request and motion, enjoining Defendant from denying Plaintiff Medicaid until a final decision on the merits of this action. (Doc. 19.)

On May 17, 2006, a Case Management Conference was conducted, wherein the parties agreed to file cross-motions for summary judgment for the Court's consideration. (Docs. 26-27.)  The parties filed joint stipulations of facts and exhibits. (Docs. 28-29.)  On July 31, 2006, Plaintiff filed his motion for summary judgment on his request to permanently enjoin Defendant from denying him Medicaid assistance and to obtain a declaratory judgment holding that Act 42, 62 PA. STAT. ANN. § 441.6, is preempted under the Supremacy Clause. (Doc. 30.)  Defendant filed her cross-motion for summary judgment on August 2, 2006. (Doc. 32.)  Both parties filed briefs in support of their motions, as well as briefs in opposition to their adversary's motion. (Docs. 31, 33, 37, 39.) Consequently, this matter is fully briefed and ripe for disposition.

### JURISDICTION

While the Medicaid Act does not guarantee rights to individuals, it compels states to draft a plan that is in conformity with federal law. *See Sabree v. Richardson*, 367 F.3d 180, 182 (3d Cir. 2004).  When a state drafts a plan that is not in conformity with federal law, and the plan leads to the denial of Medicaid benefits, an adversely affected Medicaid applicant has grounds to raise a federal question pursuant to 28 U.S.C. § 1331.

---

names the Department as the residual beneficiary of any funds remaining due under the annuity at the time of death of the annuitant, not to exceed the amount of Medical Assistance expended on the individual during his or her lifetime.

*Id.*

Here, Plaintiff claims that the Commonwealth has enacted legislation – Act 42, 62 PA. STAT. ANN. § 441.6 – that is inconsistent with federal law and one or more parts of that legislation has been relied upon in denying Medicaid assistance to Plaintiff.

However, Defendant has expressly disavowed any reliance upon Act 42, 62 PA. STAT. ANN. § 441.6, in denying Plaintiff Medicaid benefits. (Def. Br. In Opp. 3; Doc. 37.) Rather, Defendant has relied throughout this case solely upon her construction of the federal Medicaid Act and its regulations to support her denial of Medicaid benefits to Plaintiff.  Indeed, Act 42, 62 PA. STAT. ANN. § 441.6, is not mentioned in any of Defendant's briefs submitted to this Court, nor in Defendant's PA 162 notice sent to Plaintiff, which instead cites 55 PA. CODE §§ 178.4 and 178.121.  Moreover, Plaintiff even acknowledges that Defendant is not enforcing Section 441.6(d) against him. (Pl.'s Br. 14.) Consequently, notwithstanding Plaintiff's contentions, this case does not present the issue of whether Act 42, 62 PA. STAT. ANN. § 441.6, conflicts or frustrates the purpose of the federal Medicaid Act, and thereby would be preempted.

Instead, this action is based upon Defendant's alleged misinterpretation of the pertinent federal law regarding irrevocable actuarially sound commercial annuities.  As such, this case requires the Court to apply or interpret provisions of the federal Medicaid Act in order to determine whether the remedies sought by Plaintiff are warranted. *See Johnson v. Guhl*, 91 F. Supp. 2d 754, 766 (D.N.J. 2000).  Therefore, this case presents a federal question, vesting this Court with jurisdiction under 28 U.S.C. § 1331. *See Mass. Ass'n of Older Americans v. Sharp*, 700 F.2d 749, 752-53 (1st Cir. 1983) (vacating district court order denying preliminary injunctive relief in case involving a termination of Medicaid benefits based on a misinterpretation by the state of pertinent federal law and regulations regarding redeterminations of Medicaid eligibility); *see also Mont v. Heintz*,

849 F.2d 704, 709-10 (2d Cir. 1988) (failure of state to employ standard of need set in compliance with federal law in calculating periods of ineligibility for AFDC recipients in manner contemplated by federal law constitutes "practice" violative of federal law); *cf. Mertz v. Houstoun*, 155 F. Supp. 2d 415, 424 (E.D. Pa. 2001) (holding that "there is federal jurisdiction to adjudicate a claim that despite adoption of a conforming Medicaid plan, a state routinely assesses eligibility in a manner which conflicts with federal law such that it has effectively supplanted its written plan with a contrary practice"). *See generally Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974) (federal question jurisdiction exists if plaintiff's claim requires the construction of a federal statute).[2]

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[2]While this case does not fall within the class of Medicaid cases involving a state plan that allegedly conflicts with the federal Medicaid Act, which would certainly present a federal question, *see, e.g., Johnson*, 155 F. Supp. 2d at 766, neither does it fall in the class of cases in which it is only alleged that a state has violated its own Medicaid plan, which do not present a federal question, *see, e.g., Concourse Rehab. & Nursing Ctr., Inc. v. DeBuono*, 179 F.3d 38, 44 (2d Cir. 1999). The Court believes this case to be closer to the former type of case, as federal law must be interpreted in order to determine whether Defendant has misinterpreted it. As such, federal question jurisdiction exists.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

### A. Permanent Injunction

In deciding whether to grant a permanent injunction, the Court must consider whether: "(1) the moving party has shown actual success on the merits; (2) the moving

party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

### 1. Actual Success on the Merits

#### a.

In granting Plaintiff's request for a temporary restraining order and motion for preliminary injunction, this Court found that Plaintiff was likely to succeed on the merits of his claims that he was being denied Medicaid assistance by Defendant in violation of federal law and regulations, and that Act 42, 62 PA. STAT. ANN. § 441.6, is preempted by the Supremacy Clause of the United States Constitution. (Doc. 19.)  Given a second look at Plaintiff's claims, the Court is of the opinion that Plaintiff is being denied Medicaid assistance in violation of federal law.  However, as Defendant has disavowed any reliance upon Act 42, 62 PA. STAT. ANN. § 441.6, in denying Plaintiff Medicaid benefits, the Court will decline to issue a declaratory judgment that Act 42, 62 PA. STAT. ANN. § 441.6, is preempted by the Supremacy Clause.

#### b.

Federal law provides that an applicant can transfer assets to his or her spouse so long as they are for the spouse's benefit. 42 U.S.C. § 1396p(c)(2)(B)(I); Transmittal 64, §§ 3257.B.6 and 3258.11.  Section 1396p(d)(2)(a)(ii) provides, in pertinent part, that "an individual shall be considered to have established a trust if the assets of the individual were used to form all or part of the corpus of the trust and if the individual or the

individual's spouse established the trust." Section 1396p(3)(B)(I) provides that, in the case of an irrevocable trust, if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made, shall be considered resources available to the individual.

"A trust includes an annuity only to the extent and in such manner as the secretary specifies." 42 U.S.C. § 1396p(d)(6).  Transmittal 64 to the State Medicaid Manual contains provisions dealing with the issue of when an annuity is to be considered an irrevocable trust rather than a transfer of assets. *See* Transmittal 64, § 3258.9B.  It also describes how annuities are treated under the trust provision, stating:

> Annuities, although usually purchased in order to provide a source of income for retirement, are occasionally used to shelter assets so that individuals purchasing them can become eligible for Medicaid.  In order to avoid penalizing annuities validly purchased as part of a retirement plan but to capture those annuities which abusively shelter assets, a determination must be made with regard to the ultimate purpose of the annuity (i.e., whether the purchase of the annuity constitutes a transfer of assets for less than fair market value).  If the expected return on the annuity is commensurate with a reasonable estimate of life expectancy of the beneficiary, the annuity can be deemed actuarially sound."

*Id.*

In *Mertz v. Houstoun*, 155 F. Supp. 2d 415, 426-27 (E.D. Pa. 2001), the United States District Court for the Eastern District of Pennsylvania held that available assets may become unavailable assets and not countable in determining Medicaid eligibility for the institutionalized spouse when an irrevocable actuarially sound commercial annuity is purchased for the sole benefit of the community spouse.  The *Mertz* court reasoned that,

11

"[b]ecause at the time of [the Medicaid] application[,] neither spouse has an ownership interest in the funds used to purchase such an annuity, the funds are not a countable resource in calculating the CSRA." *Id*. at 426.  In purchasing the annuity to provide an income stream to the community spouse, a transfer is made to a third party for the sole benefit of the community spouse that cannot be penalized consistent with federal law. *Id.* This income stream, the court noted, is not a countable resource in calculating the CSRA, as federal law provides that no income of the community spouse may be deemed available to the institutionalized spouse. *Id.* at 427; *see also* 42 U.S.C. § 1396r-5(b)(1). The court concluded that these provisions effectively allow a couple to "convert countable resources into income of the community spouse which is not countable in determining Medicaid eligibility for the institutionalized spouse by purchasing an irrevocable actuarially sound commercial annuity for the sole benefit of the community spouse." *Mertz*, 155 F. Supp. 2d at 427.  The court voiced its displeasure with this loophole in federal law, which essentially enables couples to achieve eligibility outcomes inconsistent with the "purpose of the MCCA and indeed the whole thrust of the Medicaid program which is to provide assistance to those truly in need." *Id.*  This Court relied on the *Mertz* case in granting Plaintiff's requests for preliminary relief, concluding that Mrs. James' irrevocable actuarially sound commercial annuity was likely not a countable resource for purposes of determining Plaintiff's Medicaid eligibility.

> **c.**

Defendant offers two alternative arguments in support of her decision to deny Plaintiff Medicaid benefits.  Defendant asserts, first, that, notwithstanding the non-

assignment provision in the annuity endorsement, Mrs. James' annuity has a market value, and, therefore, is liquid and must be considered a countable resource above the CSRA, thus precluding Plaintiff's eligibility for Medicaid.  Alternatively, Defendant contends that, if the annuity is not marketable and liquid, Mrs. James' contractual right to receive payments – i.e., the stream of income derived from the annuity contract and not the annuity itself – is marketable and has a monetary value above the CSRA which makes Plaintiff ineligible for Medicaid benefits.  These arguments will be taken up in turn.

### i. The Annuity

Defendant contends that, while the endorsement on the annuity forbids assignments, it does not invalidate them.  Therefore, this provision only eliminates Mrs. James' *right* to assign the annuity – it does not limit her *power* to assign the annuity.[3]  To this end, Defendant offers the unsworn declaration of Michael Goodman, Chief Executive Officer of J.G. Wentworth, as evidence that Mrs. James' annuity is readily marketable and has a monetary value of $185,000, which J.G. Wentworth would be willing to pay to purchase the annuity, notwithstanding its non-assignment provision.  Defendant has also offered a letter from Meredith G. Van Pelt, Esq., Department of Health and Human Services, Centers for Medicare and Medicaid Services, in which Ms. Van Pelt states that

---

[3]Under the generally prevailing rules of contract law, a contractual right can be assigned unless "the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or . . . [the] assignment is validly precluded by contract." RESTATEMENT (SECOND) OF CONTRACTS § 317(2)(a)-(c) (1981).  "A contract term limiting assignments gives the obligor a right to damages for breach of the terms forbidding assignment, but does not render the assignment ineffective." *Id.* § 322(2)(b); *Int'l Telecomms. Exch. Corp. v. MCI Telecomms. Corp.*, 892 F. Supp. 1520 (N.D. Ga. 1995) (a nonassignability clause in a contract is treated as a personal covenant that does not invalidate an otherwise proper transfer, unless the clause expressly states that any assignment is "void").

under federal Medicaid rules concerning treatment of resources, "any annuity that can be sold is countable as a resource in determining eligibility." (CMS letter from Meredith G. Van Pelt, Esq., Office of Legal and Regulatory Affairs, Center for Medicaid and State Operations, at 1; Doc. 21-2 p. 1.)  As such, Defendant contends that the $185,000 fair market value of the annuity must be counted as an available resource above the CSRA, thus precluding Plaintiff from qualifying for Medicaid benefits. *See* 20 C.F.R. § 416.1201(a)(1) ("If the individual has the right, authority or *power* to liquidate the property or his or her share of the property, it is considered a resource") (emphasis added).[4]

Defendant's argument, while attractive on the surface, would contravene the edicts of Transmittal 64, § 3258.9B, which clearly states that annuities purchased as part of a valid retirement plan – regardless of their putative marketability in the view of a third party and the generally prevailing rules of contract law – are not to be penalized.  As such, if such an irrevocable actuarially sound commercial annuity were purchased as part of a retirement plan for the sole benefit of the community spouse, there can be no penalty imposed upon the Medicaid applicant.

Defendant, however, argues that "actuarial soundness is relevant only to the question of whether a transfer has been made for less than fair market value pursuant to

---

[4]Indeed, without so finding, the Court observes that the substitution of an assignee (possibly J.G. Wentworth) would not materially change the duty of the obligor (General Electric Assurance Company), as the only duty placed upon the obligor is to send the beneficiary of the annuity a check once a month.  Assignment of the annuity would also not increase the risk imposed upon the obligor, as Mrs. James has already purchased the annuity, having remitted the full purchase price of $250,000 to General Electric Assurance Company in September of 2005.  Consequently, assignment of the annuity would not materially change its terms, nor would it impose an additional burden or risk upon General Electric Assurance Company.  Moreover, the non-assignment provision, as pointed out by Defendant, merely forbids assignments – it does not render an assignment void or invalid.  As such, assignment of the annuity is not precluded under contract law because all that is limited is Mrs. James' *right* to assign the annuity, not her *power* to do so.

[Transmittal 64].  It has no bearing on whether an asset is or is not a countable resource, and in fact the plain language of [section] 3258.9 in no way makes such a connection." *Dean v. Del. Dep't of Health & Soc. Servs.*, No. Civ. A00A-05-006, 2000 WL 33201237, *7 (Del. Super. Ct. Dec. 6, 2000) (citing HCFA letter from Robert A. Streimer, Disabled and Elderly Health Programs Group, Center for Medicaid and State Operations).  As such, Defendant asserts, an annuity, notwithstanding its actuarial soundness, may be a countable resource for purposes of determining Medicaid eligibility.

The Court disagrees, giving precedence to Transmittal 64, §§ 3258.9B and 3258.11B, both of which clearly indicate that there can be no penalty on an annuity that is irrevocable and actuarially sound and is purchased for the sole benefit of the community spouse. *See Mertz*, 155 F. Supp. 2d at 426 (resources may be placed beyond the reach of either spouse, and thus not counted for eligibility purposes, with the purchase of an actuarially sound irrevocable commercial annuity for the sole benefit of the community spouse).  Consequently, Defendant's argument is rejected.

### ii. The Income Stream

Alternatively, Defendant argues that, even if the annuity is not assignable, the income stream derived from the annuity is liquid and has market value, thereby making the value of the income stream a resource to be counted towards the CSRA.

Indeed, Defendant has cited precedent making this same distinction between the annuity itself and the income stream derived from the annuity.  In *Estate of Gross v. North Dakota Department of Human Services*, the Supreme Court of North Dakota held that, where there was evidence of a secondary market and monetary value for the

15

income stream derived from a non-assignable annuity, the income stream is a countable asset for purposes of determining Medicaid eligibility. 687 N.W.2d 460, 466 (N.D. 2004) ("Here, there is evidence from which a reasoning mind could have reasonably concluded there was a market for the monthly payments or income stream from the annuity . . . . We therefore conclude . . . [that] the annuity was a countable asset for purposes of [determining] Medicaid eligibility").[5]

Defendant also points to the definition of "resources" contained in 20 C.F.R. § 416.1201(a), which provides that "resources means cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance."  "If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. [Conversely, if] a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse)." 20 C.F.R. § 416.1201(a)(1).  Defendant thus argues that, even if Mrs. James does not have the right or power to assign her annuity, she does have the right and power to liquidate her contractual right to receive annuity payments, thus making the fair market value of this contractual right – $185,000 based on the evidence presented by Defendant – a countable resource under 20 C.F.R. § 416.1201(a)(1).  Accordingly, Defendant contends that Plaintiff has resources in excess of the CSRA and is ineligible for Medicaid benefits.

---

[5] *See also Estate of Pladson v. Traill County Soc. Servs.*, 707 N.W.2d 473, 480-81 (N.D. 2005) (suggesting that if there were evidence of an available market and resale value for the purchased annuity, the contractual right to the annuity payments or income stream would be considered an available resource for purposes of determining Medicaid eligibility); *A.B. v. Div. of Med. Assistance & Health Servs.*, 865 A.2d 701, 706 (N.J. Super. Ct. App. Div. 2005) (same); *Estate of F.K. v. Div. of Med. Assistance & Health Servs.*, 863 A.2d 1065, 1077 (N.J. Super. Ct. App. Div. 2005) (same).

16

The Court disagrees.  Defendant essentially argues that, even if the income stream itself cannot be considered for purposes of determining Medicaid eligibility, the market value of that income stream should be a countable resource to preclude eligibility. Such a rule would completely undermine federal law, which excludes income of the community spouse from factoring into the institutionalized spouse's Medicaid eligibility. Indeed, a holding that the market value of an income stream derived from an irrevocable actuarially sound annuity is a countable resource would effectively contravene the MCCA, which provides that "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r-5(b)(1).  To be sure, Defendant's argument blurs the distinction drawn by the MCCA between assets and income.

Rather, so long as the principal or corpus of an irrevocable annuity or trust cannot be reached by the applicant or spouse, the income derived from such an asset cannot be counted as a resource for Medicaid purposes, notwithstanding that income stream's market value in the eyes of a third party.  *Mertz*, 155 F. Supp. 2d at 426 ("[b]ecause at the time of [the Medicaid] application[,] neither spouse has an ownership interest in the funds used to purchase such an annuity, the funds are not a countable resource in calculating the CSRA"); *see also Dean*, 2000 WL 33201237, at 7 ("the buyer [of an irrevocable commercial annuity] . . . is entitled only to the income stream; the buyer does not own the purchasing funds and cannot reclaim them") (citing *Johnson v. Guhl (Johnson I)*, 91 F. Supp. 2d 754, 764 (D.N.J. 2000)).

As such, the Court rejects Defendant's argument, and concludes that the income stream derived by Mrs. James from the irrevocable actuarially sound commercial annuity is not a countable resource, notwithstanding the evidence presented by Defendant as to

17

its marketability and resale value.  Consequently, the Court holds that Plaintiff has established actual success on the merits of his claim that he is being denied Medicaid assistance in violation of federal law.

### 2. Irreparable Injury

The Plaintiff has shown that he will suffer irreparable injury if his request for a permanent injunction were not granted.  It is undisputed that Plaintiff would be required to privately pay for his nursing facility care at a private pay rate of $5,000 per month or else risk being forced to leave the nursing facility. (Doc. 28 ¶ 13; Doc. 19 p.7.)  Plaintiff cannot be compensated by monetary relief as the Eleventh Amendment, U.S. CONST. amend XI, precludes an award of retroactive payment by a federal court. *See Edelman v. Jordan*, 415 U.S. 651, 678 (1974).  As such, there is not an adequate remedy at law to redress the denial of Medicaid benefits.  A permanent injunction is therefore appropriate.

### 3. Harm to Defendant and Public Interest

The Court's granting of a permanent injunction will not inflict more harm upon Defendant than the Court's refusal to grant it would harm Plaintiff, as the harm Plaintiff would suffer, if forced to privately pay $5,000 per month in nursing facility care or else be required to vacate the nursing facility, is substantial.

Also, the Court finds that it is in the public interest to grant Plaintiff's request for a permanent injunction, as Defendant has denied Medicaid assistance to Plaintiff in violation of federal law, notwithstanding the fact that Plaintiff has effectively achieved a Medicaid eligibility outcome inconsistent with the "purpose of the MCCA and indeed the whole thrust of the Medicaid program which is to provide assistance to those truly in

need." *Mertz*, 155 F. Supp. 2d at 427.  However, it is for Congress to close this loophole in federal law.  Accordingly, the Court will grant Plaintiff's request to permanently enjoin Defendant from denying him Medicaid benefits based upon the $250,000 annuity purchased by Mrs. James in September of 2005.

## B. Declaratory Judgment

### 1. Legal Standard

Under the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The Supreme Court has explained that the Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotations and citations omitted).  Thus, federal district courts "'wield broad and selective discretion' in determining whether to entertain a declaratory judgment action." *Canal Ins. Co. v. Paul Cox Trucking*, Civ. A. No. 1:05-CV-2194, 2006 WL 2828755, at *2 (M.D. Pa. Oct. 2, 2006) (quoting *State Farm Mut. Auto Ins. Co. v. Lavanture*, Civ. A. No. 1:05-CV-2523, 2006 WL 1344051, at *2 (M.D. Pa. May 16, 2006)).

A federal court has discretion to entertain a declaratory judgment action when it finds that the declaratory relief sought "(i) will serve a useful purpose in clarifying and settling the legal relations in issue; and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *CGU Life Ins. Co.*

*of Am. v. Metro. Mortgage & Secs. Co.*, 131 F. Supp. 2d 670, 674 (E.D. Pa. 2001).

Here, Plaintiff requests that this Court declare Act 42, 62 PA. STAT. ANN. § 441.6, invalid as preempted by the federal Medicaid Act and the Supremacy Clause.

**2. Analysis**

The Court will deny Plaintiff's request for a declaratory judgment that Act 42, 62 PA. STAT. ANN. § 441.6, is invalid as preempted by federal law.  As previously mentioned, Defendant has expressly disavowed any reliance upon Act 42 or section 441.6 in denying Plaintiff Medicaid benefits. (Def. Br. In Opp. 3; Doc. 37.)  Rather, Defendant relies solely upon her construction of the federal Medicaid Act and its regulations to support her denial of Medicaid benefits to Plaintiff.  Act 42, 62 PA. STAT. ANN. § 441.6, is not mentioned in any of Defendant's briefs submitted to this Court, nor in Defendant's PA 162 notice sent to Plaintiff, which cites 55 PA. CODE §§ 178.4 and 178.121.  Moreover, Plaintiff even acknowledges that Defendant is not enforcing Section 441.6(d) against Plaintiff. (Pl.'s Br. 14.)  Consequently, notwithstanding Plaintiff's contentions, this case does not present the issue of whether Act 42, 62 PA. STAT. ANN. § 441.6, conflicts or frustrates the purpose of the federal Medicaid Act, and thereby would be preempted.   As such, declaratory relief is neither useful nor necessary to clarifying the legal relations in issue or affording relief to Plaintiff.  Accordingly, the Court will deny Plaintiff's request for a declaratory judgment.

**CONCLUSION**

For the above-stated reasons, the Court will grant Plaintiff's motion for summary judgment as to his request for a permanent injunction.  Plaintiff's request for a declaratory judgment will be denied.  Defendant's motion for summary judgment will be denied.

An appropriate Order will follow.


 November 21, 2006                       /s/ A. Richard Caputo
Date                                       A. Richard Caputo
                                             United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT A. JAMES by his next friend and
attorney in fact, JOSEPHINE A. JAMES,

    Plaintiff,

        v.

ESTELLE B. RICHMAN, in her official
capacity as Secretary of the
Commonwealth of Pennsylvania,
Department of Public Welfare,

    Defendant.

CIVIL ACTION NO. 3:05-CV-2647

(JUDGE CAPUTO)

## ORDER

**NOW**, this _ 21st _ day of November, 2006, **IT IS HEREBY ORDERED** that:

    (1)    Plaintiff Robert A. James' Motion for Summary Judgment (Doc. 30) is:

        (A)    **GRANTED** as to his request for a permanent injunction;

        (B)    **DENIED** as to his request for a declaratory judgment;

    (2)    Defendant is **PERMANENTLY ENJOINED** from denying Plaintiff Robert A. James Medicaid benefits based on the $250,000 annuity purchased on September 12, 2005 by Plaintiff's wife, Josephine A. James.

    (3)    Defendant's Motion for Summary Judgment (Doc. 32) is **DENIED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge